IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-02790-PAB-MJW
(Consolidated with Civil Action No. 08-cv-02794-PAB-MJW)

JORDAN-ARAPAHOE, LLP, a Colorado limited liability partnership,
JACOB MAZIN COMPANY, INC., a Colorado Corporation,

      Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ARAPAHOE,
COLORADO,

      Defendant.
_____

## ORDER GRANTING MOTION TO DISMISS
_____

This matter is before the Court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed on February 27, 2009 by defendant Board of County Commissioners of the County of Arapahoe ("BOCC") [Docket No. 9]. The BOCC seeks dismissal of plaintiffs' sole claim for relief – a claim under 42 U.S.C. § 1983 for deprivation of substantive due process in violation of the Fourteenth Amendment of the United States Constitution. Plaintiffs Jordan-Arapahoe, LLP ("Jordan-Arapahoe") and Jacob Mazin Company, Inc. ("Jacob Mazin") responded to the motion to dismiss on March 16, 2009 [Docket No. 18]. Defendant filed a reply brief on March 31, 2009 [Docket No. 22]. The motion is thus ripe for disposition. For the following reasons, the Court grants the motion.

## I.  FACTUAL BACKGROUND

Taking the allegations in the Complaint[1] as true, the relevant facts are as follows.

Plaintiff Jordan-Arapahoe is the owner of a tract of land located in Arapahoe County,

Colorado, which, as of January 1998, comprised approximately 185 acres.  In January

1998, the BOCC approved a "preliminary development plan" ("1998 PDP") for a

development known as the Centennial East Corporate Center.  Pursuant to the 1998

PDP, the BOCC rezoned Jordan-Arapahoe's property from Agricultural and Open

Space to Mixed Used-Planned Unit Development ("MU-PUD").  Under the 1998 PDP,

the BOCC designated 87 acres of Jordan-Arapahoe's property as "Development Area

A" and noted sixteen allowable uses for that development area, including "Automotive

Sales and Repair."  The BOCC amended the 1998 PDP in September 1999.  The

amended PDP retained "automotive sales and repair" as one of the allowable uses on

the same 87 acre portion of Jordan-Arapahoe's property.  The original and amended

PDPs applicable to Jordan-Arapahoe's land both required that development in

Development Area A observe a thirty-foot setback from public rights of way.  The

setback requirements and allowable uses specified in the MU-PUD zoning remained

unchanged from 1998 to the present.

In September 2002, Jacob Mazin purchased 2.74 acres located in Development

Area A for $1,019,034 from Jordan-Arapahoe.  In April 2006, Jordan-Arapahoe and

---

[1]  The Court derives relevant factual allegations primarily from the Complaint filed by Jordan-Arapahoe, LLP in Case No. 08-cv-02790, but also refers to the Complaint filed by Jacob Mazin in Case No. 08-cv-02794, which the Court consolidated with the instant case on February 5, 2009 [Docket No. 7], since the two pleadings are substantially similar.

Jacob Mazin concurrently contracted to sell property in Development Area A to CarMax. Jordan-Arapahoe was to sell 15.45 acres, while Jacob Mazin would sell its entire 2.74 acres, in exchange for a total sum exceeding $6.9 million.  CarMax planned to assemble the two parcels in order to construct an automobile dealership.  Accordingly, its contracts with plaintiffs were contingent upon confirmation that CarMax's intended use of the property was a use permitted by right under the pertinent Arapahoe County zoning regulations.  CarMax presented its proposal for a dealership to Arapahoe County planning staff in March 2006.

In May 2006, the City Manager of the City of Centennial, Colorado wrote to Arapahoe County's Planning Division Manager requesting that Arapahoe County temporarily suspend all applications for development approval of automobile-sales-related uses in Arapahoe County near the property at issue in this litigation.  In turn, Arapahoe County's Planning Division Manager asked the BOCC in late May 2006 to impose a temporary suspension of all land use applications, including automobile sales, within an area including Development Area A.  On May 23, 2006, the BOCC imposed a four-week moratorium on all development proposals within Development Area A.  The City Manager for Centennial, among others, appeared before the BOCC on July 11, 2006 to request an extension to the moratorium.  Plaintiffs and their representatives also attended this July 11, 2006 meeting and "advised the BOCC there had been long discussions with prior members of the BOCC to secure approval of the land uses" for the property held by Jordan-Arapahoe and Jacob Mazin.  Compl. ¶ 26.  CarMax representatives also relayed CarMax's interest in the property, and plaintiffs informed the BOCC that their contracts with CarMax would be jeopardized by continuation of the

3

moratorium.  However, the BOCC extended the moratorium until January 2, 2007.

Over the remainder of 2006, the BOCC and the City of Centennial jointly developed proposals to alter the zoning and development standards applicable to an area that included plaintiffs' property.  In November and December 2006, the BOCC and the City of Centennial proposed draft regulations addressing these changes. Among the modifications for development in this area were certain restrictions on properties then zoned for automobile and vehicle sales uses, including a 1500 foot setback requirement from Arapahoe Road.  The Arapahoe County Planning Commission gave a unanimous negative recommendation to the BOCC on the draft regulations.  Plaintiffs also opposed the draft regulations.  The BOCC nonetheless adopted the regulations, effectively adding an "Overlay District" to existing zoning regulations.  The Overlay District supersedes portions of the MU-PUD, such that a 1500 foot setback is required for all rights of way surrounding plaintiffs' property.

On December 23, 2008, plaintiffs filed this action to redress an alleged deprivation of their substantive due process rights under the Due Process Clause of the Fourteenth Amendment.

## II.  ANALYSIS

### A.  Standard of Review

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  For a complaint to state a claim it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. (8)(a)(2).  Rule 8(a)'s

"short and plain statement" mandate requires that a plaintiff allege enough factual matter that, taken as true, makes his "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erikson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and alterations omitted). Even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286

(alterations omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson*, 534 F.3d at 1286.

### B.  Substantive Due Process Claim

To survive the BOCC's motion to dismiss, plaintiff's Complaint must sufficiently allege facts giving rise to the inference that the elements of a substantive due process claim are present.  Specifically, plaintiffs must allege facts plausibly suggesting that (1) the BOCC deprived them of a "protectible property interest" and (2) such deprivation was arbitrary.  *See Hyde Park Co. v. Sante Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  The BOCC argues that plaintiffs have failed to adequately allege facts supporting either of these elements.  Because I agree that plaintiffs' allegations concerning the first element – whether plaintiffs were deprived of a protectible property interest – are deficient, an inquiry into plaintiffs' allegations of arbitrary government action is unnecessary.

"[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."  *Hyde Park*, 226 F.3d at 1210.  A "protectible property interest" is a term describing the type of "property" referenced in the Fourteenth Amendment: "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1; *see Hyde Park*, 226 F.3d at 1210.  The Supreme Court has defined such property to include a "legitimate claim of entitlement" to a particular benefit.  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  However, "[a]n abstract

need for, or unilateral expectation of, a benefit does not constitute 'property.'" *Hyde Park*, 226 F.3d at 1210 (quoting *Roth*, 408 U.S. at 577). Property interests do not arise from the Constitution. *Roth*, 408 U.S. at 577. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Tenth Circuit precedent further elucidates the issue of what constitutes a property interest in the municipal land use context. In this arena, "the entitlement analysis presents a question of law and focuses on 'whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs.'" *Hyde Park*, 226 F.3d at 1210 (quoting *Norton v. Vill. of Corrales*, 103 F.3d 928, 931-32 (10th Cir.1996)). "A property interest exists if discretion is limited by the procedures in question, that is, whether the procedures, if followed, require a particular outcome." *Nichols v. Board of County Comm'rs of the County of La Plata*, 506 F.3d 962, 970 (10th Cir. 2007) (quoting *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1217 (10th Cir. 2003)). "On the other hand, where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is implicated." *Id.* (internal quotation marks omitted). Under this standard, plaintiffs must show that the BOCC had limited discretion to disapprove the use of plaintiffs' property for automobile and vehicle sales purposes and that, had the BOCC followed its standard procedures, it would have issued plaintiffs "final development plans." If, on the other hand, the BOCC had the discretion to deny

plaintiffs' final development plans then plaintiffs have no "protectible property interests."

To identify the nature of plaintiffs' interest in the zoning of the MU-PUD, I turn first to the statutes and regulations bearing on zoning use classifications applicable to plaintiffs' property. *See Nichols*, 506 F.3d at 970 ("constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials"). In Colo. Rev. Stat. § 24-68-103(1), the Colorado General Assembly defined when a "vested property right" arises in regard to site specific development plans. "A vested property right shall be deemed established with respect to any property upon the approval, or conditional approval, of a site specific development plan, following notice and public hearing, by the local government in which the property is situated." Colo. Rev. Stat. § 24-68-103(1)(b). It is the obligation of "each local government" to "specifically identify, by ordinance or resolution, the type or types of site specific development plan approvals within the local government's jurisdiction that will cause property rights to vest." *Id.* § 24-68-103(1)(a). The purpose of the statute, known as the Vested Property Rights Act, is, among other things, "to ensure reasonable certainty, stability, and fairness in the land use planning process . . . ." *Id.* 24-68-101(1).

In Arapahoe County's case, the relevant ordinances defining the types of approvals of a "site specific development plan" that cause property rights in zoning classifications to vest are set forth in the Arapahoe County Land Development Code (the "Code"), portions of which the BOCC attached to its motion. *See* Def.'s Mot. to Dismiss [Docket No. 9], Ex. B. The Court finds it appropriate, pursuant to Fed. R. Evid. 201, to take judicial notice of the ordinances contained therein. *See Zimomra v. Alamo*

*Rent-A-Car, Inc.*, 111 F.3d 1495, 1503-04 (10th Cir. 1997) ("Federal Rule of Evidence

201 authorizes a federal court to take judicial notice of adjudicative facts at any stage of

the proceedings . . . . This includes taking notice of provisions in municipal ordinances."

(citations omitted)).  Subsection 1-4902.04 of the Code states that "owners of land

wishing to develop their land for uses specified in . . . MU . . . districts shall follow the

P.U.D. procedure outlined in this section."  Relevant to the present inquiry, subsection

1-4901.09 outlines the following general procedure:

> In a standard P.U.D., the development standards are established after the
> completion of two steps: the Preliminary and Final Development Plans.
> The final document must achieve the County's nine state goals for P.U.D.
> zoning, and must comply with all other applicable restrictions of the
> Regulations.  The preliminary development plan ("PDP") establishes
> general land uses and siting restrictions, including proposed site
> development criteria.

Subsection 1-4903.01 provides that a preliminary development plan is "the first step in

establishing land uses and siting restrictions for a parcel of land" and states that the

"uses, minimums and maximums provided in the PDP will be reviewed at the Final

Development Plan stage to further determine the appropriateness for the particular site

and neighborhood."  Under this subsection, a final development plan "must be

submitted and approved prior to the issuance of building permits for improvements to

any site."  Code § 1-4903.01.  The Code specifically addresses what constitutes a

"vested property right" in the context of planned unit development zoning.  Citing the

provisions of Article 68 of Title 24 of the Colorado Revised Statutes, subsection 1-

4912.01 states that a "vested property right" may arise from either "approval of a 'site

specific development plan' or by approval of a 'development agreement' relating to the

proposed development."[2]  A final development plan for property that has received final

plat approval by the BOCC qualifies as a "site specific development plan," which, if

approved, gives rise to a vested property right.  *Id.*

In addition to the foregoing statutory and regulatory structure, Colorado law

defines whether plaintiffs have identified a valid property interest.  *See* Colo. Rev. Stat.

§ 24-68-106(3) (stating that nothing in the Vested Property Rights Act "shall preclude

judicial determination, based on common law principles, that a vested property right

exists in a particular case").  The general rule under Colorado law is that "uses

permitted by particular zoning classifications are not vested rights, and subsequent

zoning regulations are binding upon owners."  *Board of County Comm'rs of Adams

County v. City and County of Denver*, 40 P.3d 25, 33 (Colo. App. 2001) (citing *Town of

Lyons v. Bashor*, 867 P.2d 159, 160 (Colo. App.1993)); *Cline v. Boulder*, 450 P.2d 335,

338 (Colo. 1969) (citing favorably the "majority rule" that a property owner "must take

some steps in reliance on [their building] permit before his rights vest thereunder" and

before the owner is "protected against revocation . . . by subsequent enactment or

amendment of zoning laws prohibiting the building" (quoting 8 McQuillin Mun. Corp. §

25.156 (3d ed. 1965)).  Of particular note, in *City of Aspen v. Marshall*, 912 P.2d 56, 60-

61 (Colo. 1996), the Colorado Supreme Court stated that, "generally speaking, no

---

[2]  Subsection 1-4912.04 of the Code provides that "[t]he process for establishing a 'vested property right' relating [to] a development agreement shall involve negotiation of an agreement between the County and the developer."  Plaintiffs did not allege that either of them, or CarMax, reached an agreement through negotiation with Arapahoe County that constitutes such a "development agreement."  Nor have they raised such an argument in their response to the BOCC's motion to dismiss.  The Court therefore considers the vesting of any property rights in plaintiffs only with respect to approval by the BOCC of a site specific development plan.

preliminary proceedings to the obtaining of a permit give rise to any vested right to pursue a use in a zoned district.  Thus, no vested right to a particular use in a zoned district is acquired by approval of a plan for it."  (quoting 8 McQuillin Mun. Corp. § 25.155, at 691 (3d ed. 1991)).  In *Eason v. Board of County Comm'rs of County of Boulder*, 70 P.3d 600, 605 (Colo. App. 2003), the Colorado Court of Appeals addressed the issue of whether "a landowner has a protected property interest in a prior zoning classification."  The *Eason* court concluded that "Colorado law recognizes a protected property interest in a zoning classification when a specifically permitted use becomes securely vested by the landowner's substantial actions taken in reliance, to his or her detriment, on representations and affirmative actions by the government."  *Id.* at 605-06.

Under the foregoing statutes, ordinances, and case law, plaintiffs have not adequately alleged a "protectible property interest" within the meaning of the Fourteenth Amendment.  Plaintiffs cite their allegations that "[u]nder Colorado law, the MU-PUD zoning and the automotive sales and repair uses permitted by right on the [plaintiffs'] Property are securely vested common law property rights," Compl. ¶ 51, and that "[a]utomobile sales and repair uses were permitted by right when [plaintiffs] negotiated to sell [their property] to CarMax for automobile sales and repair uses."  Compl. ¶ 41. The key component of these allegations supporting a due process claim – that certain zoned uses were "permitted by right" – is a legal conclusion.  Under *Ashcroft v. Iqbal*, 129 S.Ct. at 1950, these allegations "are not entitled to the assumption of truth."  It is the very conclusion posited in these allegations that the BOCC tests with its motion to dismiss.  "While legal conclusions can provide the complaint's framework, they must be

11

supported by factual allegations." *Id.* at 1940.

The factual allegations contained in plaintiffs' pleadings show that, in fact, they had no protectible property interest in the MU-PUD zoning of their property and the allowable uses identified in that zoning.  Plaintiffs allege that in January 1998, "the BOCC approved a Preliminary Development Plan for the Centennial East Corporate Center . . . and rezoned [Jordan-Arapahoe's] 185.395 acres of land lying south of Arapahoe Road between Potomac Street and Jordan Road from Agricultural and Open Space to Mixed Use-Planned Unit Development."  Compl. ¶ 6.  They further allege that this rezoning recognized "Automotive Sales and Repair" among the "allowable uses" within Development Area A – a subset of their property.  *Id.*  ¶ 7.  These factual allegations are dispositive on the issue of whether plaintiffs have a protectible property interest under the Due Process Clause of the Fourteenth Amendment.  They make clear that plaintiffs claim a vested property right in a preliminary zoning, not a final approval of a site specific use.  This cannot constitute a vested property interest under the authorities discussed above.  Rather, plaintiffs' pleadings show that they were at the first step of the process mandated under the Arapahoe County Code and had yet to obtain approval of a final development plan.

Because plaintiffs have alleged only preliminary approval of certain uses of their property by the BOCC, they have failed to plausibly allege a property interest protected under the Fourteenth Amendment.  It is clear from the Arapahoe County ordinances governing development of plaintiffs' property that, like the ordinances in *Hyde Park*, 226 F.3d at 1211, Arapahoe County has a "two-tiered" approval process requiring both preliminary and final approval of a particular development.  Based on the Court's

review, the governing ordinances provide only two statements specifically addressing the standard by which the BOCC evaluates a final development plan.  First, a final development plan "must meet the PDP-minimum development standards and also be an application which is desirable overall when weighed against the P.U.D. standards." Code § 1-4901.09.  Second, at a hearing on a final development plan, the BOCC will take action either approving, with or without conditions, continuing, or denying the proposal, or taking it under advisement.  *Id.* § 1-4904.08.  In taking such action, the BOCC's decision "shall be based upon the evidence [in] the record relating to the application, applying the standards set forth in this Section 1-4901."  *Id.*  These ordinances do not provide a discernable limitation governing the BOCC's exercise of discretion in approving a final development plan.  Plaintiffs therefore cannot show that the BOCC had limited discretion to disapprove the zoning classifications in a final development plan applicable to their property.  Accordingly, plaintiffs' allegations establish no more than a "unilateral expectation" that the BOCC would approve the development of their property as an automobile dealership and, thus, fail to show a protectible property interest.  *See Hyde Park*, 226 F.3d 1212.

The *Eason* case is distinguishable from this one.  There the landowner relied on an affirmative promise from the municipal planning authority, made in writing, that a specific use was allowed.  *Eason*, 70 P.3d at 606.  The closest plaintiffs come to alleging a similar representation in this case is their assertion that, on July 11, 2006, Jordan-Arapahoe's "representatives advised the BOCC there had been long discussions with prior members of the BOCC to secure approval of the land uses for the Jordan-Arapahoe Property."  Compl. ¶ 26.  As discussed above, the land use

13

ordinances applicable to plaintiffs' property require approval of both a preliminary development plan and a final development plan before a property owner has a vested property right in a particular use of its property.  Even reading the foregoing allegation broadly, the only plausible conclusion it supports is that negotiation was required to obtain approval of certain uses in the preliminary development plan assigned to plaintiffs' property in 1998.

Plaintiffs also rely on *Moreland Properties, LLC v. City of Thornton*, 559 F. Supp. 2d 1133 (D. Colo. 2008), to argue that their reliance on the MU-PUD zoning gives rise to a protectible property interest.  However, like *Eason*, the *Moreland* case is distinguishable from this one.  At the time the property in *Moreland was* purchased, it was zoned to permit certain automobile-related uses without any further need to apply for a specific or temporary use permit.  559 F. Supp. 2d at 1137.  Unlike this case, the municipality in *Moreland* did not identify additional procedures that the property owner was required to complete prior to obtaining a vested right in the particular zoning classification.  *Id.* at 1137, 1146-47.

## III. CONCLUSION

Plaintiffs stake their legal argument on detrimental reliance.  While their expenditures are unfortunate, their reliance was not justified in light of section 1-4900 of the Arapahoe County Land Development Code and Colo. Rev. Stat. § 24-68-103(1)(b).  For the foregoing reasons, it is

**ORDERED** that defendant Board of County Commissioners of the County of Arapahoe's motion to dismiss [Docket No. 9] is GRANTED.  It is further

14

**ORDERED** that this matter, and all claims asserted therein, is dismissed with prejudice.  The Clerk shall forthwith enter judgment in favor of defendant Board of County Commissioners of the County of Arapahoe and against plaintiffs Jordan-Arapahoe, LLP and Jacob Mazin Company, Inc.  Defendant is entitled to its costs.  *See* D.C.COLO.LCivR 54.1; Fed. R. Civ. P. 54(d)(1).

DATED September 9, 2009.

BY THE COURT:

s/Philip A. Brimmer                    
PHILIP A. BRIMMER
United States District Judge